JACC
X 6783

AO 106 (Rev. 04/10) Application for a Search Warrant

FILED

MAY 04 2017

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY np DEPUTY

# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Samsung Galaxy S5 cellular telephone
Model # SM-G900F
Serial # R58F91298Wj, IMEI #356100066209790

Case No. ~~[illegible]~~

'17MJ1325

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

located in the Southern District of California, there is now concealed *(identify the person or describe the property to be seized)*:
Samsung Galaxy S5 cellular telephone, Model # SM-G900F, Serial # R58F91298Wj, IMEI # 356100066209790

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 USC 1546(a) | False Statements in an Immigration Application |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: ___________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Matthew Schick, Special Agent, HSI, ICE, DHS
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/4/17

City and state: San Diego, Ca.

[signature]
*Judge's signature*

Hon. Karen S. Crawford, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

Samsung Galaxy S5 cellular telephone
Model # SM-G900F
Serial # R58F91298Wj
IMEI # 356100066209790

currently in the possession of the Regional Computer Forensics Laboratory located at 10385 Vista Sorrento Parkway, San Diego, CA 92121.

# ATTACHMENT B

The following evidence to be searched for and seized pertains to violations of Title 18 of the United States Code, Section 1546(a):

1. Communications, records, or data including but not limited to emails, text messages, contacts, photographs, audio files, videos, or location data:

   a. tending to indicate efforts to subvert the immigration laws of the United States.

   b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, phone numbers that may contain electronic evidence tending to indicate efforts to aid and abet the falsification of immigration oaths and or visa applications.

   c. tending to identify co-conspirators, criminal associates, or others involved in the organized falsification of records pertaining to immigration.

   d. tending to identify travel to or presence at locations where pertinent false immigration records are produced and or the physical location of the defendant.

   e. tending to identify the user of, or persons with control over or access to, the subject phone; or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

'17MJ1325

| IN THE MATTER OF THE SEARCH OF | Case No.: ~~17MJ1246~~ |
|---|---|
| Samsung Galaxy S5 cellular telephone, Model # SM-G900F, Serial # R58F91298Wj, IMEI # 356100066209790 | AFFIDAVIT OF SPECIAL AGENT MATTHEW SCHICK SPECIAL AGENT IN SUPPORT OF SEARCH WARRANT |

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Special Agent Matthew Schick, upon being duly sworn do hereby state that the following is true to my knowledge and belief:

**INTRODUCTION**

1. I make this Affidavit in support of an Application for a Search Warrant for the following property: One (1) cellular telephone seized in connection with the arrest of Abulghani Mohamed Alomari.

2. Cellular telephone 1, hereinafter referred to as **Target Telephone** is a Samsung Galaxy S5, Model number SM-G900F, having IMEI 356100066209790. On April 27, 2017 at approximately 1145 hours, TT1 was seized from Alomari's personal property stored at the Immigration and Customs Enforcement (ICE) Detention Center at 7488 Calzada de la Fuente, in San Diego, California. Based on the facts set forth herein, I submit there is probable cause to believe that **Target Telephone**, as more fully described in **Attachment A,** holds evidence, as more fully described in **Attachment B**, of violations of Title 18, United States Code, Section 1546(a), False Statement in an Immigration Application.

3. This affidavit is based upon information obtained from several sources, including, but not limited to, a review of law enforcement databases, an analysis of

evidence obtained prior to the arrest, information received from other law enforcement personnel, and knowledge gained from my training and experience.

**TRAINING AND EXPERIENCE**

4. I am a Special Agent (SA) with ICE Office of Homeland Security Investigations (HSI). I have been employed with ICE since February 2010. I have conducted criminal investigations of or relating to benefit fraud. I have received specific training in benefit fraud investigations and the methods used by human smugglers and traffickers to bring certain aliens into the United States, to transport such aliens within the territorial borders of the United States, and harbor/ conceal from detection such aliens within the United States. I graduated from the Criminal Investigator Training Program (CITP) and Immigration and Customs Enforcement Special Agent Training (ICESAT) at the Federal Law Enforcement Training Center (FLETC). Upon graduating from ICESAT, I received the award for Outstanding Performance Special Agent. As part of this training, which I attended from February through July 2010, I attended criminal investigation training that included course studies in, among other things, criminal law, constitutional law, search and seizures, and courtroom procedure. From 2011 to 2015, I was assigned to the HSI, Imperial Valley Border Enforcement Security Task Force, Human Trafficking/Human Smuggling Group (IVBEST-HT/HS), or its equivalent investigative unit. IVBEST-HT/HS is a criminal investigative unit that conducts extensive criminal investigations that target Transnational Criminal Organizations (TCO). IVBEST-HT/HS is tasked with gathering intelligence, investigating, arresting, and prosecuting members of TCOs that transport aliens and/or narcotics into the United States of America utilizing the Southern District of California as an operational corridor. These investigations are complex criminal investigations involving mid-level to high-level smuggling organizations.

5. I have also attended the ICE advanced Immigration and Benefit Fraud Training Program (IBFTF) at FLETC. The IBFTF training course is designed to train investigators on the method and means used by TCOs and individuals to commit fraud against the U.S. Immigration system as well as how individuals and TCOs unlawfully move people into and out of the United States.

6. I am a Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States and thereby authorized to request issuance of federal search and seizure warrants. During my career, I have targeted or assisted in the targeting of multiple smuggling organizations, which resulted in the issuance of search warrants, seizure warrants, and convictions of drivers, guides, harborers, and upper level facilitators for violations under Title 8, Title 18, and Title 21 of the United States Code.

7. I have participated in and conducted investigations of violations of Federal criminal laws, including benefit fraud in violation of Title 18 of the United States Code. These investigations resulted in arrests of individuals who have smuggled Undocumented Aliens (UDAs), committed immigration fraud, received payment for their participation in fraud schemes, held UDAs and extorted their family members for money, and the seizure of vehicles and criminal proceeds. Also, these investigations have resulted in the disruption of the various TCOs involved in human smuggling operations/ fraud schemes and the composition of their organizational structure. Through these investigations, training, and numerous hours of interviews, I am familiar with the modes and methods of both individuals and TCOs who seek to exploit the security of the United States through the illicit cross border movement of people through fraud and smuggling.

8. I am currently a task force officer (TFO) assigned to the Joint Terrorism Task Force (JTTF) and have been assigned therein since 2015. The mission

statement of the JTTF is to protect the United States against terrorist attack by sharing information with our law enforcement and public safety partners, responding rapidly to and investigating all possible terrorist activity, and conducting effective counterterrorism training. As a task force officer on the JTTF, I have attended multiple advanced trainings sponsored by the Federal Bureau of Investigation (FBI) as well as specific HSI related training sponsored by HSI. These trainings include the FBI Counterterrorism Operations Course as well as the HSI JTTF Threat Stream Overstay training. In addition, I attended the HSI Visa Security Investigations Course at FLETC, and have served an assignment in Nairobi, Kenya investigating fraud with regards to visa procurement.

9. I have conducted investigations concerning the identification of co-conspirators through the use of telephone records, photographs, criminal records, financial statements, and other documents. I have also participated in the debriefings of several individuals arrested by the FBI, HSI and many other federal state and local partners. I have utilized these cooperating witnesses to further identify the methods, modes, and subjects involved in various fraud schemes.

10. The source of information and belief of the facts contained herein are oral and/or written reports which have been written and reviewed about this case; reported to me either directly or indirectly; an arrest made by the JTTF; interviews with the suspect; and information received from law enforcement partners overseas.

11. Because this affidavit is being submitted for the limited purpose of obtaining a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts I believe are necessary to establish probable cause for the search warrant sought in this affidavit. Unless specifically indicated otherwise, all conversations, statements, and reports described in this affidavit are related in substance and in part only.

## PROBABLE CAUSE

12. On or about October 26, 2016, Abdulghani Mohamed Alomari (Alomari) illegally entered the United States near San Diego, California from Mexico and was apprehended by the United States Border Patrol. During processing, Alomari stated that he was a citizen of Yemen and did not have legal documents to be in the United States. Alomari was found inadmissible to the U.S. under Section 212(a)(7)(A)(i)(I), as an immigrant not in possession of valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by the Immigration and Nationality Act. Alomari was processed under the Expedited Removal provisions, expressed fear of return to Yemen and was referred to an asylum officer for a credible fear determination.

13. On or about January 1, 2017, within the Southern District of California, defendant, Alomari, completed an Application for Asylum and for Withholding of Removal, Form I-589. Part C, Question 2A asks, "After leaving the country from which you are claiming asylum, did you, or your spouse or children who are now in the United Sates travel through or reside in any other country before entering the United States?" Alomari answered "Yes" and wrote, "I traveled from Yemen to Egypt, after approximately three years I boarded a flight to Mexico, I remained about tow [sic] month before I entered the U.S." On the same Form I-589, Part C, Question 2B asks, "Have you, your spouse, your children, or other family members such as your parents or siblings, ever applied for or received any lawful status in any country other than the one from which you are now claiming asylum?" Alomari answered "No." On January 1, 2017, Alomari signed the Form I-589 under the penalty of perjury, swearing that the information contained in the form was true and accurate and being warned that providing false statements is a violation of Title 18, United States Code, Section 1546(a).

14. On or about February 1, 2017, within the Southern District of California, Alomari completed Form I-821, Application for Temporary Protected Status. Part 4, Question 1C asks, "Have you EVER resided in any country(s) other than the one listed in Item Number 1A?" Alomari checked "Yes." On Part 4, Question 1D, Alomari listed only one country, Egypt. On February 1, 2017, Alomari signed the Form I-821 under the penalty of perjury, swearing that the information contained in the form was true and accurate.

15. On or about February 9, 2017, HSI agent Brandon Nordhoff requested that the HSI Office of International Affairs make an inquiry with German authorities utilizing Alomari's fingerprints to determine if Alomari had applied for or ever been granted lawful residence status in Germany. On or about February 15, 2017, Agent Nordhoff received a response from the German Office of Bundespolizeiinspektion Kriminalitatsbekampfung. According to the information from German authorities, an individual named Abdulghani Mohammed Hasan Al Amri, date of birth February 1, 1987, whose bears similar name and resemblance to ALOMARI, holds German residency issued on June 6, 2016, and expires June 5, 2017. German authorities also provided a copy of Al Amri's fingerprints.

16. On March 1, 2017, Agent Nordhoff provided ALOMARI's fingerprints from his arrest in the United States and the fingerprints provided by German authorities for Al Amri to the Department of Homeland Security Biometric Support Center. According to the biometric support center, the fingerprints were made by the same person. In other words, Alomari failed to declare his legal status and residency in Germany on his I-589 and I-821 applications.

17. On April 27, 2017, HSI SA Nordhoff filed a complaint in the Southern District of California (Criminal Case #17MJ1246) charging Alomari with false statements on immigration applications in violation of Title 18, United States Code, Section 1546(a).

18. Following his arrest, Alomari waived his Miranda rights and admitted that he had procured legal residency in Germany, and he had applied for residency status in multiple other countries throughout Europe. Alomari stated he had been informed by co-conspirators abroad that legal residency status was easy to obtain in the United States through misuse of the U.S. asylum laws. Alomari stated the contact information for various acquaintances in Europe and Yemen was located in his cellular phone. During the post arrest interview of Alomari, Alomari stated his cellular telephone, later identified by Alomari as **Target Telephone,** was located in his property at the ICE Detention Center.

19. On April 27, 2017, at approximately 1145 hours, SA Schick and Group Supervisor (GS) Lipe took possession of the **Target Telephone** and Alomari's personal property at the ICE Detention Center while transporting Alomari to the Metropolitan Correctional Center (MCC) in San Diego. Upon arrival at MCC, Alomari was booked into Bureau of Prisons custody, and **Target Telephone,** along with Alomari's personal property, was turned over to SA Nordhoff. SA Nordhoff showed Alomari the **Target Telephone**, Alomari authenticated the phone as belonging to him, and verbally gave his consent to search the phone.

20. On April 27, 2017, at approximately 1530 hours the phone was taken to the Regional Computer Forensics Laboratory (RCFL) in San Diego, CA for analysis. RCFL technicians stated the phone could not be examined because it was protected by a password. RCFL technicians further explained they will be able to search the phone utilizing sensitive examination techniques with the issuance of a warrant.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

21. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which

the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephone and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The

personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN DATA

24. The United States has not attempted to obtain this data means other than what has been mentioned in paragraph 17.

## CONCLUSION

25. Based on the above described information and observations, I believe there is probable cause to search **Target Telephone**, described more fully in **Attachment A**, for evidence of violations of holds evidence, as more fully described in **Attachment B**, of Title of Title 18, United States Code, Section 1546(a), false statements in an immigration application.

Matthew Schick, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
this 4th day of May 2017.

Honorable Karen S. Crawford
United States District Judge

# ATTACHMENT A

Samsung Galaxy S5 cellular telephone
Model # SM-G900F
Serial # R58F91298Wj
IMEI # 356100066209790

currently in the possession of the Regional Computer Forensics Laboratory located at 10385 Vista Sorrento Parkway, San Diego, CA 92121.

# ATTACHMENT B

The following evidence to be searched for and seized pertains to violations of Title 18 of the United States Code, Section 1546(a):

1. Communications, records, or data including but not limited to emails, text messages, contacts, photographs, audio files, videos, or location data:

a. tending to indicate efforts to subvert the immigration laws of the United States.

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, phone numbers that may contain electronic evidence tending to indicate efforts to aid and abet the falsification of immigration oaths and or visa applications.

c. tending to identify co-conspirators, criminal associates, or others involved in the organized falsification of records pertaining to immigration.

d. tending to identify travel to or presence at locations where pertinent false immigration records are produced and or the physical location of the defendant.

e. tending to identify the user of, or persons with control over or access to, the subject phone; or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.